**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

ANDRE G. BOUCHARD
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: March 2, 2021
Date Decided: April 14, 2021

Jeremy D. Eicher, Esquire
Eicher Law LLC
1007 North Orange Street, 4th Floor
Wilmington, DE 19801

Jennifer C. Voss, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 North King Street, 7th Floor
Wilmington, DE 19801

Frank E. Noyes, II, Esquire
Offit Kurman, P.A.
1201 N. Orange Suite, Suite 10E
Wilmington, DE 19801

Kevin R. Shannon, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

RE:   *In re: TransPerfect Global, Inc.*
      Civil Action No. 9700-CB

      *Elizabeth Elting v. Philip R. Shawe, et al.*
      Civil Action No. 10449-CB

Dear Counsel:

This letter constitutes the court's decision on the motion of Robert B. Pincus

(the "Custodian"), the court-appointed Custodian of TransPerfect Global, Inc.

("TPG" or the "Company"), for an order of discharge, which was argued on March

2, 2021.   The motion was accompanied by a comprehensive form of order (the

"Proposed Order").[1]   The court will issue at a later date a decision on the

---

[1] Dkt. 1535.  Unless otherwise noted, docket references come from C.A. No. 9700-CB.

objections that were made to certain fee petitions of the Custodian and certain related motions, which also were argued on March 2, 2021.

As virtually any reader of Court of Chancery decisions knows, the Custodian was appointed under 8 *Del. C.* § 226 after a 2015 trial that chronicled the irretrievable dysfunction and deadlocks between the Company's two co-founders: Elizabeth Elting and Philip R. Shawe. Among other duties, the Custodian was charged to run a sale process that resulted in Shawe purchasing Elting's 50% interest in the Company under a Securities Purchase Agreement dated November 19, 2017 (the "SPA") to become its 99% owner, with Shawe's mother holding the remaining 1%. This decision refers to the Company and Shawe together, at times, as "Respondents."

On February 15, 2018, the court entered an order approving the SPA (the "Final Order"), which incorporated releases virtually verbatim from the SPA.[2] On May 3, 2018, the Delaware Supreme Court affirmed this order and the related opinion.[3] The transaction closed a few days later on May 7, 2018. Thereafter, the Custodian remained responsible for certain post-closing tasks, including some tax

---

[2] *See* Dkt. 1243 ¶ 3.

[3] *Elting v. Shawe*, 185 A.3d 694 (Del. 2018) (TABLE).

matters and a post-closing purchase price adjustment process, which have been completed.

Respondents and Elting do not oppose the discharge of the Custodian.[4] Elting also does not oppose the terms of the Proposed Order but she has requested two modifications, which are addressed below.[5] The Respondents object to many of the provisions in the Proposed Order and ask the court to enter instead a one-paragraph order stating:

> . . . that the Custodianship is terminated effectively immediately, and that going forward the Custodian, Robert Pincus Esq., shall retain the same protections and indemnification rights granted to him under the Securities Purchase Agreement, the Sale Order and the Final Order in his individual capacity as he has had in his capacity as Custodian.[6]

The discharge of a court-appointed custodian, as with the appointment of one, generally rests within the discretion of the appointing court.[7] The form of order Respondents have proposed is inadequate for the task. Given the lengthy and

---

[4] Dkt. 1552 at 1; Dkt. 1566 ¶ 20.

[5] *See* Dkt. 1552.

[6] Dkt. 1566.

[7] *See Jagodzinski v. Silicon Valley Innovation Co., LLC*, 2015 WL 4694095, at *6 (Del. Ch. Aug. 7, 2015) ("Black letter authority suggests that the 'appointment and discharge of a receiver is ordinarily a matter resting within the sound discretion of the appointing court.'") (quoting Ralph Ewing Clark, A Treatise on the Law and Practice of Receivers 1270 (3d ed. 1959)).

fractious history of these actions,[8] the numerous (and often frivolous) collateral litigations spawned from the sale process that have embroiled the Custodian and many others, and the complexity of the issues involved, a more nuanced discharge order is necessary to provide clarity on the terms of discharge.

Accompanying this decision is the order of discharge the court has approved (the "Discharge Order") after carefully considering the issues raised in the parties' briefs and during oral argument. Attached as Exhibit A is a redline showing the differences between the Discharge Order and the Proposed Order. The Proposed Order contained seventeen paragraphs of substantive provisions. Using those paragraph numbers as a frame of reference, the court discusses next the more significant differences between the Proposed Order and the Discharge Order.

Paragraphs 1-2, 11. These paragraphs effectuate the discharge and address the escrow account (the "Escrow") established under the SPA. Respondents do not

---

[8] *See, e.g., In re TransPerfect Glob., Inc.*, 2019 WL 5260362, at *1 (Del. Ch. Oct. 17, 2019), *appeal dismissed sub nom. TransPerfect Glob., Inc. v. Pincus*, 224 A.3d 203 (Del. 2019) (TABLE), and *cert. denied*, 2019 WL 6130807 (Del. Ch. Nov. 18, 2019); *In re TransPerfect Glob., Inc.*, 2018 WL 904160 (Del. Ch. Feb. 15, 2018), *aff'd sub nom. Elting v. Shawe*, 185 A.3d 694 (Del. 2018) (TABLE); *In re TransPerfect Glob., Inc.*, 2017 WL 3499921 (Del. Ch. Aug. 4, 2017); *In re Shawe & Elting LLC*, 2016 WL 3951339 (Del. Ch. July 20, 2016), *aff'd sub nom. Shawe v. Elting*, 157 A.3d 142 (Del. 2017); *In re TransPerfect Glob., Inc.*, 2016 WL 3477217 (Del. Ch. June 20, 2016, revised June 21, 2016); *Shawe v. Elting*, 2015 WL 5167835 (Del. Ch. Sept. 2, 2015); *In re Shawe & Elting LLC*, 2015 WL 4874733 (Del. Ch. Aug. 13, 2015), *aff'd sub nom. Shawe v. Elting*, 157 A.3d 152 (Del. 2017).

object to paragraphs 1-2, which will be entered as submitted with one clarification Elting requested,[9] *i.e.*, that paragraph 2 provide that Mr. Pincus will remain empowered to direct the distribution of funds in the Escrow to the Buyer and Seller (as defined in the SPA) after his discharge to the same extent he could do so before his discharge. Respondents object to paragraph 11 insofar as it gives the Custodian's attorneys—Skadden, Arps, Slate, Meagher & Flom LLP—a right to direct certain payments that is not found in the SPA or the agreement governing the Escrow.[10] The court agrees with Respondents that Mr. Pincus should remain responsible for directing payments post-discharge and has modified the Discharge Order accordingly. The revised version of paragraph 11 in the Proposed Order appears in paragraph 6 of the Discharge Order.

Paragraphs 3-5. These paragraphs provide that the protections afforded under the Court's various orders, the parties' agreements, and Delaware law will continue in effect after the discharge as to Mr. Pincus, his counsel, and his other advisors, respectively. Respondents' only specific objection to these provisions is that paragraph 3 could be read to reinstate certain provisions of the SPA that have

---

[9] *See* Dkt. 1552 at 1-2.

[10] Dkt. 1566 ¶ 12.

terminated, in particular a now expired non-disparagement provision.[11] The Custodian disagrees with this interpretation of the Proposed Order, contending that it "does not revive terminated SPA provisions."[12] To avoid any confusion on the issue, the court has added a provision in paragraph 3 making clear that it does not modify the duration of any provisions of the SPA. Any term that has expired thus will remain expired.

Paragraphs 6-10. According to the Custodian, these provisions "attempt to clarify the nature of" certain protections to which the Custodian and his counsel are entitled (*e.g.*, judicial immunity, indemnification, and payment obligations) "for the avoidance of doubt and future disputes."[13] Respondents object to each of these provisions, primarily on the ground that the language in these paragraphs purportedly broadens or expands the protections at issue.[14]

Having carefully reviewed each of these provisions, the court shares the concern that some of them are worded in a manner that could be construed as expanding upon pre-existing protections even if that was not the intent. For this reason, and because the Custodian contends these provisions were not intended to

---

[11] *Id.* ¶¶ 7, 28.

[12] Dkt. 1570 at 11 n.4.

[13] Dkt. 1535 ¶ 5.

[14] *See* Dkt. 1566 ¶¶ 8-11.

expand pre-existing protections documented elsewhere, these paragraphs have been deleted from the Discharge Order to avoid confusion over the scope of the pre-existing protections.

Paragraphs 12-14. These provisions concern the process for submitting fee petitions in the future for amounts that may be due to Mr. Pincus and/or his attorneys or other advisors. Respondents object that these provisions materially modify the fee petition procedures the court established in the Second Order Concerning Custodian's Motion for Civil Contempt and Sanctions, as modified on January 12, 2021 (the "Second Order").[15] The court agrees with Respondents that the procedures set forth in the Second Order should govern any future fee petitions.[16]

Paragraphs 12-13 have been combined (into paragraph 7 of the Discharge Order) and modified to reflect that the Second Order will continue to govern any future fee petitions and to require (i) that a supporting affidavit be provided with each fee petition in the future and (ii) that Mr. Pincus and/or his advisors provide to the Company copies of the affidavit and the Billing Record required under the

---

[15] Dkts. 1399, 1559.

[16] At the conclusion of the March 2 hearing, the court directed that no further fee petitions may be filed until the court rules on the pending fee petitions. Hr'g Tr. at 140 (Mar. 2, 2021) (Dkt. 1595). That direction remains in place.

Second Order before filing any future fee petitions for purposes of engaging in good faith discussions to attempt to resolve any fee dispute. Paragraph 14 also has been modified to make clear that Mr. Pincus may continue to retain attorneys and other advisors in the future for specified purposes. The revised version of paragraph 14 in the Proposed Order appears in paragraph 8 of the Discharge Order.

Paragraphs 15-16. These provisions, which now appear in a modified form in paragraphs 9 and 10 of the Discharge Order, consist of a release and bar order relating to Mr. Pincus's service as the Custodian of the Company. In their papers, Respondents and the Custodian both discuss the release and bar provisions in the Proposed Order by comparing them to the release and bar provisions in the SPA and Final Order.

Respondents object that the Proposed Order "modifies the release language contained in the SPA," pointing to the following specific language:

> The release (i) covers Pincus "in any capacity" and his "past, present and future family members"; (ii) covers Skadden's "future" partners (in addition to its past and present partners); (iii) provides indemnification for "experts' fees" (in addition to attorneys' fees), and "accrued and unaccrued liabilities"; and (iv) broadens the scope of covered actions.[17]

---

[17] Dkt. 1566 ¶ 15.

As to the bar provision in the Proposed Order, Respondents object only generally that it "expands the existing bar orders in the Final Order, without explanation."[18]

The Custodian contends that the release and bar orders in the Proposed Order do "not broaden" and are "consistent with" the ones in the SPA and/or Final Order.[19] To that end, the Custodian highlights Section 8.2(f) of the SPA, where Shawe agreed that he and the Company would be barred from pursuing "a claim of any nature whatsoever" against the Custodian and his advisors:

> Parent and Buyer hereby agree that the order approving this Agreement . . . shall include, without limitation, . . . a provision barring, to the fullest extent permitted by law, Parent [Shawe], Buyer [PRS Capital LLC], Seller [Elting], Shareholders, the Company and its Subsidiaries or Affiliates, from initiating or pursuing, or causing any other Person to initiate or pursue, a claim of any nature whatsoever, against the Custodian, Skadden, Arps, Slate, Meagher & Flom, LLP (and its partners and employees), and the Custodian's representatives, including, without limitation, Credit Suisse Securities (USA) LLC, Alvarez & Marsal LLC and Thomas Pennell.[20]

The Custodian goes on to explain that "[d]ischarge orders also can grant rights and protections not previously afforded in earlier orders,"[21] and provides examples of

---

[18] *Id.* ¶ 16.

[19] Dkt. 1570 ¶¶ 20-21.

[20] Dkt. 1185 Ann. C § 8.2(f). Paragraph 5 of the Final Order contains two bar orders. In what the court can only assume was a drafting mistake, the bar orders in the Final Order do not list the Company specifically by name as subject to the bar orders even though the language in SPA expressly contemplated that would be the case. *See* Dkt. 1243 ¶ 5.

[21] Dkt. 1570 ¶ 15.

when the court has done so.[22]  Respondents provided no authority to the contrary on this point.

Turning to Respondents' specific objections, the court agrees with Respondents that the release should cover Mr. Pincus only in his capacity as Custodian, which includes his role as a director,[23] and has implemented this change by deleting the "in any capacity" language in the Proposed Order to which the Respondents object.  This clarification aligns the scope of the release with the ones in the SPA and the Final Order,[24] which cover, in relevant part, all matters arising out of or relating to the then-prior orders of this court authorizing the Custodian's actions:

> any and all Claims . . . arising out of, based upon or related to . . . any acts, events, facts, matters, transactions, occurrences, statements, or representations, or any other matter whatsoever arising out of or related to the Order of the Court, dated March 9, 2015, the Order of the Court, dated August 13, 2015, or the Sale Order and any matters contemplated thereby.[25]

---

[22] *See id.* Exs. 1-4.

[23] *See TransPerfect Glob.*, 2019 WL 5260362, at *11 ("Pincus' service as a tie-breaking director on the Company's board until a sale of the Company could be consummated was one of the purposes for which he was appointed as the Custodian in August 2015.").

[24] Shawe agreed in the SPA that "provisions concerning indemnification, advancement of legal fees and expenses, and releases consistent with the provisions in this Agreement," would be included in the Final Order.  Dkt. 1185 Ann. C § 8.2(f).  As noted above, the Final Order includes releases that track the ones in the SPA virtually verbatim.  *See* Dkt. 1243 ¶ 3.

[25] Dkt. 1185 Ann. C § 8.2(b).

The court also has deleted the reference to "future" partners of Skadden, Arps, Slate, Meagher & Flom LLP when listing the released parties by name. With respect to Respondents' third objection, the court disagrees that the release in the Proposed Order "*provides indemnification* for 'experts' fees' (in addition to attorneys' fees), and 'accrued and unaccrued liabilities.'"[26] The release does not create a new right to indemnification, but simply uses the terms "expert fees" and "unaccrued" in detailing the types of liabilities that are released.

Finally, the court agrees with the Custodian that the release and bar order should include the Company by name as a releasor and as bound by the bar order. This clarification is consistent with the provision of the SPA quoted above and is appropriate given Shawe's control over the Company to ensure that all disputes arising out of the Custodian's service are put to rest. Respondents did not object to this aspect of the release or the bar order in the Proposed Order.

Paragraph 17. This paragraph, which appears as paragraph 11 of the Discharge Order, provides for the court's retention of exclusive jurisdiction over specified matters. In response to Elting's request, the court has added a clause to make clear that the court's retention of exclusive jurisdiction includes any disputes

---

[26] Dkt. 1566 ¶ 15 (emphasis added).

between or among the parties relating to "Tax Proceedings," as that term is defined in the SPA.[27]

Finally, the court has added at the end of the Discharge Order a provision entering final judgment under Court of Chancery Rule 54(b) with respect to the Discharge Order.

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gm

---

[27] *See* Dkt. 1185 Ann. C § 1.1.

12